OPINION
{¶ 1} Appellant appeals his conviction and sentence entered on June 28, 2005, following a jury trial, in the Stark County Court of Common Pleas on two counts of Aggravated Arson and one count of domestic violence.
 {¶ 2} Appellee is State of Ohio.
 {¶ 3} STATEMENT OF THE FACTS AND CASE
 {¶ 4} On February 12, 2005, at approximately 5:00 p.m., Appellant Gregory Sines came home from work to the South Arch apartment building where he and Heidi Hawkins had lived in since January, 2005.
 {¶ 5} Appellant's son came over to visit. Hawkins and Appellant started horsing around and Appellant threw a blanket over Hawkins and "pinned" her down. Because she is claustrophobic, she couldn't breathe. According to Hawkins, later that evening Appellant got "angry and scared when the "cops" came to the door and she let them in without a warrant."
 {¶ 6} Ray Boggs, a neighbor, observed Appellant grab a pillow off the couch and smack Hawkins "up side the face" knocking a cigarette out of her mouth. Appellant took a table that held a phone, pounded on it a couple of times and threw it. Hawkins then left the home, ran across the street and hid behind the apartment building because she was afraid. Hawkins then knocked on the window of her neighbor, Ray Boggs, and Butch Barnes let her in. Hawkins was shaking and scared. Barnes went to the Hawkins-Sines apartment and knocked on the door. Barnes informed Hawkins that nobody answered the door. Hawkins then returned to her apartment when she thought Appellant had left. Appellant, however, had not left and the couple started arguing again. Finally, Hawkins went to bed, thinking the "whole argument would drop." But the argument did not drop. Appellant kept coming into the bedroom kicking the bed and yelling. When Hawkins would not respond to his taunts, Appellant took the phone and starting "beating" it. Hawkins, shoeless, then left the apartment a second time and returned to Boggs apartment. Hawkins was afraid and ran into the Boggs' bathroom when she heard something upstairs. About a minute later, Barnes heard the window break and saw "somebody drop and take off."
 {¶ 7} Barnes saw fire coming out the Hawkins-Sines broken living room window and called 911 to report that the building was on fire.
 {¶ 8} At approximately 11:30 p.m., Jeana Hatton looked out the front door of her apartment on South Arch Street in Alliance, Ohio, and saw Appellant, Gregory Sines, coming out of the window of an apartment across the street. He hung from a tree holding a satellite television dish, then dropped to the sidewalk, wearing no shirt or shoes. Within minutes of Appellant hitting the ground, Hatton saw an orange glare and black smoke coming out the window. Hatton yelled at Appellant and he started to come over to her. Not knowing what he was going to do, Hatton threatened Appellant with a baseball bat. Appellant turned onto Cambridge Street and started running. Hatton called the police. While on the telephone with the dispatcher, Hatton saw Heidi Hawkins looking at her apartment and crying while yelling at Appellant as he was running up Cambridge Street. Another neighbor, Debra Vargo, heard her yelling, "that he [Sines] did it, he tried to kill her, that he started the Fire."
 {¶ 9} Michelle Mitchell, who occupied the apartment next to Appellant's apartment, she woke up around 11:30 p.m. and heard Appellant Sines yelling, "[Y]ou're not motherfucking leaving me. You hear me?" She tried to go back to sleep and woke up again when she heard loud banging. She went back to sleep and woke up again when she smelled smoke. She walked into the living room and saw smoke coming out of the ceiling. She ran to the front door, opened it up and saw smoke coming out of the long hallway.
 {¶ 10} The police and fire department were dispatched. When they arrived, the apartment building was on fire. The firefighters evacuated the occupants of the apartment building, including Keith Thomas, his thirteen year old son and his son's friend. The police began to look for a suspect in the area. They began looking for a shirtless white male with longer hair wearing jeans. Officer Manse parked his cruiser on Summit Street and walked down Mechanic Avenue. He spotted a white male back out of an alley. He was coughing and had black soot on his body. Appellant Sines was placed in handcuffs and advised of hisMiranda warnings. Appellant told Manse he wasn't sure how the fire occurred but that it did not happen in his apartment — the only way he could get out was to jump out the window.
 {¶ 11} Eugene DeVies, an arson investigator for the Alliance Fire Department, began an investigation that night. DeVies determined that the fire started in the living room of the Hawkins-Sines apartment at the end of the sofa in the southwest corner of the living room. The fire was fully "involved" in fifteen to twenty minutes. DeVies opined that the Hawkins-Sines apartment fire could not have occurred from an ignited cigarette. He further observed that there was no battery in the smoke detector. DeVies opined that the fire was intentionally set on the right hand side of the living room sofa by a human act.
 {¶ 12} Sines had been convicted of arson in 1992. There, Sines set his "kids' clothing and his wife's clothing on fire in a bedroom on the floor." The smoke detector in the home had been disabled. The battery was moved away from the detector so it wouldn't go off. When that investigation began, Sines was gone and found a day later.
 {¶ 13} The fire caused the loss of the occupants' personal belongings and over $70,000 to the apartment building. It caused the hospitalization of two tenants.
 {¶ 14} On April 8, 2005, Appellant Gregory Sines was indicted and charged with one count of Aggravated Arson, in violation of R.C. § 2909.02(A)(1)[Fl] [substantial risk of serious physical harm], one count of Aggravated Arson, in violation of R.C. §2909.02(A)(2) [F2] [physical harm to any occupied structure] and one count of domestic violence, R.C. 2919.25.
 {¶ 15} Appellant was charged with setting a fire or explosion which caused serious physical harm in an occupied apartment building at 542 South Arch Avenue, Alliance, Ohio on February 12, 2005. Appellant was also charged with causing physical harm to Heidi Hawkins, a family or household member.
 {¶ 16} Appellant entered pleas of not guilty and the case proceeded to disposition before Judge Richard D. Reinbold of the Stark County Common Pleas Court. Prior to trial, the State filed a motion to allow the introduction of other acts evidence, to wit: the previous arson conviction in September, 1992 and a prior domestic violence conviction in 2003 against the same victim, Heidi Hawkins. The trial court allowed such evidence provided that it came from a reliable source — the arresting officer for the domestic violence conviction and the fire investigator for the 1992 fire.
 {¶ 17} On June 21, 2005, the trial commenced in this matter. The State presented thirteen witnesses including the alleged victim, Heidi Hawkins, police officers who responded to the 911 call, occupants of the apartment building, the owner of the apartment building and the fire investigator. At the close of the State's case, Appellant's motion for acquittal was overruled.
 {¶ 18} Appellant presented one witness.
 {¶ 19} At the close of the evidence, the trial court instructed the jury on the elements of the crime charged. The trial court also admonished the jury not to consider Appellant's prior convictions as evidence that Appellant committed the offense now charged. The trial court also instructed the jury that Appellant's flight may be considered as consciousness of guilt.
 {¶ 20} The following day, the jury returned with a verdict of guilty as charged in the indictment. The trial court then sentenced Appellant to ten years on count one, eight years on count two and eighteen months on count three. The trial court ran the sentences for counts one and two concurrently, rejecting the State's argument that counts one and two [aggravated arson] were not allied offenses. Appellant was sentenced to a total of eleven and one half years in prison.
 {¶ 21} This timely appeal follows arguing the following violations in the introduction of evidence, jury instructions and weight and sufficiency of the evidence:
 ASSIGNMENTS OF ERROR {¶ 22} "I. THE TRIAL COURT ERRED IN ALLOWING OTHER ACTS EVIDENCE IN VIOLATION OF EVIDENCE RULE 404(B) THEREBY DENYING APPELLANT A FAIR TRIAL.
 {¶ 23} "II. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY ON FLIGHT.
 {¶ 24} "II. THE VERDICT OF THE TRIAL COURT CONVICTING APPELLANT OF DOMESTIC VIOLENCE AND ARSON WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I. {¶ 25} In the first assignment of error, Appellant argues that the trial court erred in allowing evidence of Appellant's prior arson and domestic violence convictions. We disagree.
 {¶ 26} Evidence Rule 404(B) states:
 {¶ 27} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 28} R.C. § 2945.59 states:
 {¶ 29} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 30} Because Evid.R. 404(B), and R.C. § 2945.59, codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. State v. Broom (1988), 40 Ohio St.3d 277,533 N.E.2d 682, syllabus by the court, paragraph 1.
 {¶ 31} In State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, 781 N.E.2d 88, the Ohio Supreme Court held the admission of evidence is addressed to the broad discretion of the trial court, and a reviewing court shall not disturb evidentiary decisions in the absence of abuse of discretion resulting in material prejudice. The Supreme Court has repeatedly held the term abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., State v.Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 32} In the case sub judice, the arson investigator from the Sebring Fire Department from the 1992 fire testified that in that case, clothing belonging to Appellant's wife and kids was set on fire in the bedroom. He further testified that the smoke detectors had been disabled: the upstairs smoke detector had been removed from the wall and the battery in the downstairs detector had been moved so that it would not go off. (T. at 294-295). No accelerant was used to start the fire.
 {¶ 33} The arson investigator from the Alliance Fire Department testified that the 2005 fire was intentionally set and that the fire started in the southwest corner of the living room at the end of the sofa. (T. at 324). Additionally, the smoke detector's battery was missing. (T. at 331). No accelerant was used to start the fire. (T. at 3163-17, 333).
 {¶ 34} With regard to the 2003 domestic violence charge, Heidi Hawkins testified that she and Appellant had been arguing and that he set some clothing on fire. (T. at 172, 194).
 {¶ 35} The trial court gave the following limiting instruction to the jury:
 {¶ 36} "Evidence was received about the commission of acts other than the offense with which the Defendant is charged in this trial. That evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity with that character." (T. at 372).
 {¶ 37} Our review of the record leads us to conclude the trial court was well aware of the possible prejudice to appellant in admitting this evidence. We find this evidence was relevant and appropriate to the issues in appellant's case.
 {¶ 38} Appellant's first assignment of error is overruled.
 II. {¶ 39} In his second assignment of error, Appellant argues that the trial court erred in instructing the jury that it could consider flight in determining Appellant's guilt. We disagree.
 {¶ 40} As part of its charges, the trial court instructed the jury as follows:
 {¶ 41} "The State of Ohio has presented evidence that the defendant may have fled the scene of the fire. You may not presume the Defendant guilty from this evidence. You may, however, infer a consciousness of guilt regarding the evidence of the Defendant's alleged flight. An accused's flight and related conduct may be considered as evidence of consciousness of guilt." (T. at 372).
 {¶ 42} It is well established that flight is admissible as evidence that tends to show consciousness of guilt. Sibron v.New York (1968), 392 U.S. 40, 66. Further, a jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge. See United States v. Dillon
(C.A.6, 1989), 870 F.2d 1125.
 {¶ 43} A decision as to whether to issue a flight instruction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. State v. Sims
(1984), 13 Ohio App.3d 287, 289, 469 N.E.2d 554. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 44} Flight from justice "means some escape or affirmative attempt to avoid apprehension." State v. Wesley, Cuyahoga App. No. 80684, 2002 Ohio 4429, citing United States v.Felix-Gutierrez (C.A.9, 1991), 940 F.2d 1200, 1207.
 {¶ 45} Here, there was ample evidence presented at trial to support the trial court's decision to give the jury an instruction on flight.
 {¶ 46} The neighbor, Jeana Hatton, testified that she saw Appellant jump from the window and leave the scene. (T. at 117-118). He was arrested by officers approximately a block from where the fire started. (T. at 261).
 {¶ 47} Upon thorough review of the testimony, we find that sufficient evidence existed to support the flight instruction. There is no support in Ohio law for appellant's contention that an individual must run away or leave the scene rapidly in order for his actions to constitute "flight." As set forth above, flight has been held to mean "some escape or affirmative attempt to avoid apprehension." Wesley, supra. It is clear from the testimony that appellant fled from the scene of the fire before the police arrived in order to avoid apprehension.
 {¶ 48} Accordingly, the trial court did not abuse its discretion by instructing the jury on flight and Appellant's second assignment of error is overruled.
 III. {¶ 49} In his third assignment of error, Appellant argues that his convictions on the arson and domestic violence charges were against the manifest weight and sufficiency of the evidence.
 {¶ 50} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492,503.
 {¶ 51} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 52} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St.3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541,1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 53} Appellant was charged with Aggravated Arson and Domestic Violence, in violation of R.C. § 2909.02(A)(1), §2909.02(A)(2), and § 2919.25(A), which state:
 {¶ 54} "R.C. § 2909.02 Aggravated Arson
 {¶ 55} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 56} "(1) Create a substantial risk of serious physical harm to any person other than the offender;
 {¶ 57} "(2) Cause physical harm to any occupied structure;
 {¶ 58} "R.C. § 2919.25 Domestic Violence
 {¶ 59} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 60} "* * *
 {¶ 61} "(D)(1) Whoever violates this section is guilty of domestic violence.
 {¶ 62} "* * *
 {¶ 63} "(4) If the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence * * *, a violation of division (A) or (B) of this section is a felony of the third degree, and a violation of division (C) of this section is a misdemeanor of the first degree."
 {¶ 64} With regard to the aggravated arson charges, the jury heard testimony from the fire investigator as to the cause of the fire, the location where the fire started and his opinion that same was intentionally set. Testimony was also presented that the fire caused over $70,000.00 in property damage, that the fire caused the entire apartment building to be evacuated and that a couple in their sixties were hospitalized for smoke inhalation.
 {¶ 65} In support of the domestic violence charge, the jury heard testimony from the neighbor Ray Boggs who stated that he saw the argument between the victim and Appellant and that he saw Appellant smack the victim "upside the face" with one of the sofa pillows, knocking a cigarette from her mouth. (T. at 152, 213). He further testified that he observed the victim yelling that Appellant threatened to kill her. Id. Additionally, he testified that the victim came to his apartment two times that evening, afraid to return to her own apartment. Id.
 {¶ 66} Additionally, the police testified that the victim signed a domestic violence form at the scene, on the night of the incident. (T. at 272).
 {¶ 67} It should also be noted that Appellant stipulated to his prior domestic violence conviction.
 {¶ 68} In the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the witnesses' credibility. It is clear the jury chose to believe Ms. Hawkin's version of the incident as given to the police on the night it occurred rather than her reluctant testimony on the day of trial.
 {¶ 69} Based on the foregoing, we find there was sufficient, competent evidence to support appellant's convictions on both aggravated arson and domestic violence and the same was not against the manifest weight of the evidence.
 {¶ 70} Appellant's third assignment of error is overruled.
 {¶ 71} This cause is affirmed.
Boggins, J., Gwin, P.J and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, is affirmed. Costs assessed to appellant.