OPINION *Page 2 
{¶ 1} Defendant-appellant Mason French appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of felonious assault with a firearm specification and one count of having weapons while under disability. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On July 17, 2006, the Stark County Grand Jury indicted appellant on one count of attempted murder in violation of R.C. 2923.02(A) and R.C. 2903.02(A), a felony of the first degree, one count of felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree, and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree. The counts of attempted murder and felonious assault were accompanied by firearm specifications.
 {¶ 3} At his arraignment on July 21, 2006, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 4} Subsequently, a jury trial commenced on August 31, 2006. The following testimony was adduced at trial.
 {¶ 5} On June 3, 2006 at approximately 1:00 a.m., Officer Ryan Davis, who was in uniform in a marked cruiser, received a call pertaining to a shooting a 1537 Gateway Boulevard S.E. in the City of Canton. Medics, who had first arrived on the scene in response to a call that a man was having trouble breathing, called the police after they discovered that the man actually had been shot. When Officer Davis arrived on the scene, Officer Robert Flaherty pulled up slightly ahead of him. *Page 3 
 {¶ 6} Officer Ryan Davis testified that Quanise Purdy, appellant's daughter, came up to him and that she was "very excited, agitated." Transcript at 142. Officer Davis testified that Purdy told him that her father had just shot her boyfriend, Ralone Nelson, and that Nelson was dying at the bottom of a hill. The officer testified that he and Officer Flaherty found a shirtless black male moaning on his back underneath a bush at the bottom of a steep bank. According to Officer Davis, the man, who was Nelson, had a bullet hole in his lower neck below his throat and another bullet hole in his arm. The following testimony was adduced when Officer Davis was questioned about his observation of Nelson's injuries:
 {¶ 7} "A. As I stated, he had a bullet hole in his lower throat and another one in his arm. When he was laying on his back talking to me, he actually had blood bubbling out of the hole in his throat.
 {¶ 8} "Q. Have you had the opportunity, in your ten years as a police officer, to observe victims of gunshot wounds?
 {¶ 9} "A. Yes, sir.
 {¶ 10} "Q. Many times in the past?
 {¶ 11} "A. Yeah, quite a few.
 {¶ 12} "Q. And did you share the same assessment of the paramedics?
 {¶ 13} "A. I didn't think he would be alive when we got him to the hospital." Transcript at 147-148. Nelson did not die from his injuries, but spent sixteen (16) days in the hospital.
 {¶ 14} At the trial, Officer Davis testified that he then went back to the house on Gateway and observed blood on the front porch, the front door and throughout the *Page 4 
house. The officer testified that the house was in disarray and that there was a bullet hole in the wall. He further testified that, through his investigation, he was able to determine that appellant was Quanise Purdy's father.
 {¶ 15} Sergeant Danny McCartney, a detective with the Canton Police Department, testified that he became involved in the investigation of the shooting in this case and that "[information was developed that the suspect in the shooting name was Mason French." Transcript at 164-165. A warrant was then issued for appellant's arrest. When asked what attempts he made to find appellant when the warrant was issued, Sergeant McCartney testified that he put a "BOLO" [be on the lookout] out with a description of appellant. The sergeant further testified that appellant was eventually picked up in Alliance by the Alliance Police Department on the Monday following the shooting, which took place on a Saturday. Appellant was arrested on approximately June 6, 2006, but no weapon was ever recovered.
 {¶ 16} Sergeant McCartney further testified that he interviewed appellant who told him that he had been involved in an altercation with Nelson and that, during the altercation, Nelson had pushed him down the steps and had kicked him in the head. Appellant also told McCartney that he then left and retrieved a .22 pistol that he had bought and that he kept in a plastic bag across the street in the woods. Appellant told McCartney that it took him awhile to find the gun because it was dark and that, once he found it, he went back and shot Nelson, who he believed, was a threat to himself and his daughter. Appellant took two friends, one who is known as "Sonny" with him when he returned to Purdy's house. McCartney further testified that appellant told him that he had thrown the gun into Meyers Lake. *Page 5 
 {¶ 17} Quanise Purdy, appellant's daughter, testified at trial that her father came over to her house on June 6, 2006 after he got off work around 3:00 p.m. and that, around 11:00 p.m., he got into a fight with Nelson about Purdy's car. Purdy testified that her father wanted to use her car and became upset when she told him he could not and that then appellant got into an argument with Nelson. Purdy also testified that appellant was upset with Nelson after Nelson questioned him about his drug use.
 {¶ 18} According to Purdy, as Nelson was lying on the couch, appellant "jumped up in his face, he was mugging" and that appellant then punched Nelson in the eye. Transcript at 186-187. Purdy also testified that Nelson then hit appellant and that appellant then fell backwards down the basement stairs. Purdy was finally able to break up the fight.
 {¶ 19} According to Purdy, appellant then left and, about 45 minutes later, came back. Nelson unlocked the screen door and let him in. While Nelson was standing at the sink in his underwear making tacos, appellant shot him. Purdy testified that she then tried to grab the gun from her father and told Nelson to run. After he was shot again, Nelson then ran into the bushes across the street from her house and hid.
 {¶ 20} At trial, appellant testified in his own defense. Appellant testified that he got into an argument with Nelson after Nelson took $10.00 that appellant had given to a minor relative for good grades. Appellant testified Nelson had a big gun with a clip on him that day and that Nelson threatened him with the same. Appellant then left the house after arguing with appellant and returned later with two friends to pick up items that he needed for work. Appellant testified that, before arriving at his daughter's house, *Page 6 
he recovered a small handgun that he had purchased for protection and had hidden in the woods.
 {¶ 21} At trial, appellant did not deny shooting Nelson, but testified that Nelson was shot after he grabbed for appellant's gun. He testified that he then ran away and threw the gun into Meyers Lake because he was "discombobulated" and "[n]othing really crossed my mind other than running." Transcript at 277. The gun was never recovered.
 {¶ 22} At the conclusion of the evidence and the end of deliberations, the jury, on September 1, 2006, found appellant guilty of felonious assault, with a firearm specification, and having weapons while under disability. After the jury was unable to reach a verdict on the attempted murder charge, the trial court declared a mistrial on such charge.
 {¶ 23} Pursuant to a Judgment Entry filed on September 13, 2006, the trial court sentenced appellant to an aggregate sentence of fifteen (15) years in prison.
 {¶ 24} Appellant now raises the following assignments of error on appeal:
 {¶ 25} "I. TRIAL COURT ERRED IN IMPAIRING APPELLANT'S RIGHT TO CROSS EXAMINE WITNESSES.
 {¶ 26} "II. THE TRIAL COURT ERRED IN ERRONEOUSLY GIVING A FLIGHT INSTRUCTION TO THE JURY WHEN THE EVIDENCE ADDUCED AT TRIAL DID NOT SUBSTANTIATE THE INSTRUCTION.
 {¶ 27} "III. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE." *Page 7 
 I {¶ 28} Appellant, in his first assignment of error, argues that the trial court erred in impairing appellant's right to cross examine witnesses. We disagree.
 {¶ 29} The admission or exclusion of evidence rests within the sound discretion of the trial court, and will not be reversed on appeal absent an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343, paragraph two of syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 30} It is improper to attempt to communicate by innuendo through the examination of a witness when the inquiring party does not have a good-faith basis for the question. See State v. Gillard (1988),40 Ohio St.3d 226, 230, 533 N.E.2d 272, overruled on other grounds.
 {¶ 31} In the case sub judice, appellant attempted, on cross-examination, to question Purdy, appellant's daughter, about third persons selling drugs to appellant and the victim. Through such questions, appellant attempted to suggest that Nelson was actually shot by a third person named "Sonny", a drug dealer who was present when the shooting took place, and, appellant alleges, might having been owed money by appellant. The trial court, however, sustained the state's objection to such questions, stating, in relevant part, as follows:
 {¶ 32} "The point is, I said to him, I fall back on that point of one needs a good faith basis in which to bring on cross-examination to inquire as to certain things and certain matters. And I didn't feel that there was a good faith basis for some of the *Page 8 
questions being asked. Not from Mr. Kaplanis's point of view, but from his client whispering in Mr. Kaplanis's ear, hey, ask this because this now is what happened, this new found theory of the case at, you know, 2:30. So that's one reason.
 {¶ 33} "The second reason is, and it goes back to the State's continuing argument, of some value, that cross-examination is not a vehicle to get in a defense through self-serving statements. And so there is a line that you can't cross. You know, you can get your whole defense in with never having to say anything, but not just raising these. For those reasons, I limited Mr. Kaplanis in his attempt and I wanted that on the record as to why I did." Transcript at 244-245.
 {¶ 34} We find that the trial court's decision preventing appellant from questioning Purdy about "Sonny" was not arbitrary, unconscionable or unreasonable. As noted by appellee, appellant never indicated to Sergeant McCarthy when he was questioned after the shooting that someone else was the shooter. More importantly, appellant, who testified at trial, did not deny shooting Nelson. Rather, he testified that Nelson was accidentally shot when he grabbed for appellant's gun. In short, there was no good faith basis to ask Purdy questions on the issue of this newly alleged shooter. We concur with appellee that appellant did not offer any good faith basis to suggest that Nelson was shot by a third person because this third person was owed money for drugs.
 {¶ 35} Appellant's first assignment of error, is, therefore, overruled. *Page 9 
 II {¶ 36} Appellant, in his second assignment of error, argues that the trial court erred in instructing the jury that it could consider flight in determining appellant's guilt when there was insufficient evidence to support such an instruction. We disagree.
 {¶ 37} As part of its charges, the trial court instructed the jury as follows:
 {¶ 38} "In this case there is evidence that the Defendant may have fled from justice. You may not presume the Defendant guilty from this evidence. You may, however, infer a consciousness of guilt regarding the evidence of the Defendant's alleged flight.
 {¶ 39} "An accused flight and related conduct may be considered as evidence of a consciousness of guilt and thus guilt itself of the commission of a crime." Transcript at 310.
 {¶ 40} As noted by this Court in State v. Sines, Stark App. No. 2005CA00181, 2006-Ohio-1956:
 {¶ 41} "It is well established that flight is admissible as evidence that tends to show consciousness of guilt. Sibron v. New York (1968),392 U.S. 40, 66. Further, a jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge. SeeUnited States v. Dillon (C.A.6, 1989), 870 F.2d 1125.
 {¶ 42} "A decision as to whether to issue a flight instruction rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. State v. Sims (1984), 13 Ohio App.3d 287,289, 469 N.E.2d 554. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or *Page 10 
unconscionable conduct by the court. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 43} "Flight from justice "means some escape or affirmative attempt to avoid apprehension." State v. Wesley, Cuyahoga App. No. 80684, 2002 Ohio 4429, citing United States v. Felix-Gutierrez (C.A.9, 1991),940 F.2d 1200, 1207." Id at paragraphs 42-44.
 {¶ 44} While appellant contends that the evidence adduced at trial did not substantiate a flight instruction, we disagree. As is stated above, testimony was adduced at trial that appellant fled after the shooting and a warrant was issued for his arrest. Michael Beebe, appellant's parole officer, testified that, after he was advised of the shooting, he went by appellant's APA [Adult Parole Authority] approved residence and appellant was not there. Beebe testified that he later went to appellant's daughter's house, where appellant had formerly lived, and that appellant was not there either. Beebe testified that he then pursued a third address in Alliance after being advised of the same while at appellant's daughter's house.
 {¶ 45} Moreover, at the trial in this matter, appellant testified that he left the scene after the shooting and threw the gun into Meyer's Lake and that the only thing that crossed his mind was to run. Appellant did not turn himself in until three days after the shooting.
 {¶ 46} Based on the foregoing, we find that there was ample evidence presented at trial to support the trial court's decision to give the jury an instruction on flight.
 {¶ 47} Appellant's second assignment of error is, therefore, overruled. *Page 11 
 III {¶ 48} Appellant, in his third assignment of error, argues that his conviction for felonious assault is against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 49} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 50} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily *Page 12 
for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 51} R.C. 2903.11(A) provides a definition of felonious assault: "(A) No person shall knowingly do either of the following: . . . (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance* * *."
 {¶ 52} At the trial in this matter, Quanise Purdy, appellant's daughter, testified that appellant shot her boyfriend, Ralone Nelson, while Nelson was standing making tacos. Appellant now notes that Purdy, the only eyewitness, did not report the shooting to the police[1]and Purdy admitted at trial that Nelson had been violent towards her in the past.
 {¶ 53} However, the jury, as trier of fact, was in the best position to assess Purdy's credibility. The jury clearly chose to believe Purdy's testimony that appellant knowingly shot Nelson while Nelson was standing in the kitchen in his underwear making tacos.
 {¶ 54} Based on our review of the record, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly caused serious physical harm to Nelson. We further find that the jury, in convicting appellant, did not lose its way so as to create a manifest miscarriage of justice. *Page 13 
 {¶ 55} Appellant's third assignment of error is, therefore, overruled.
 {¶ 56} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Farmer, P.J. and Wise, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] As is stated above, medics reported the shooting to the police. *Page 1