[Cite as *State v. McDonald*, 2017-Ohio-8496.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   27237 |
| | : | |
| v. | : | T.C. NO. 15-CR-3459 |
| | : | |
| KERRY V. McDONALD, JR. | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 9th day of November, 2017.

. . . . . . . . . . .

ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CANDI S. RAMBO, Atty. Reg. No. 0076627, P. O. Box 66, Springboro, Ohio 45066
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Kerry V. McDonald, Jr., appeals his conviction and sentence for one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree; and one count of having a weapon while under disability (prior offense

of violence), in violation of R.C. 2923.13(A)(2), a felony of the third degree. The aggravated burglary count was accompanied by a mandatory one-year firearm specification, in violation of R.C. 2929.14 and 2941.141. McDonald filed a timely notice of appeal with this Court on August 26, 2016.

{¶ 2} The victim in this case, C.O., began dating McDonald in 2013, and they eventually moved in together. C.O. and McDonald remained in a relationship for over a year until 2014, when McDonald was convicted of aggravated assault in a separate case and sent to prison. C.O. ended the relationship with McDonald shortly after incarceration, but informed him that she wanted to remain friends. McDonald did not want the relationship to end and told C.O. that they would be together or would be "enemies." While McDonald was in prison, C.O. moved into her own apartment and did not inform him of its location.

{¶ 3} After not hearing from McDonald for several months, on October 28, 2015, C.O. received the following threatening text messages from him, to wit: 1) "When I catch u I wonder is you gone beg for yo life like you begged me to be with you. COWARDSDIEATHOUSANDDEATHS;" and 2) "So scary you stole my personal s***. I have old letters and messages for proof. F*** yo phone change yo number. You will not need a phone where you going." C.O. reported the threatening text messages to the police and filed a request for a restraining order against McDonald.

{¶ 4} While at work on November 7, 2015, C.O. received another threatening text from McDonald at approximately 11:31 p.m., which stated, "I know where you at. You got some dude with glasses on." C.O. testified that she understood McDonald's message to be referring to her new boyfriend, G.R. After receiving the message, C.O.

reported the incident to the police.

{¶ 5} C.O.'s shift ended at approximately 5:00 a.m. on November 8, 2015, and she went home to her apartment. Upon arriving at her apartment, C.O. immediately noticed that the light in her dining room was off. C.O. testified that she always leaves the dining room light on before she goes to work. After opening the front door to her apartment, C.O. noticed that the bathroom light had been turned on. She testified that she always turns it off before leaving for work. Once inside her apartment, C.O. observed McDonald sitting on her couch.

{¶ 6} C.O. testified that she screamed and ran out of the apartment, trying to shut the front door and lock it from the outside. McDonald got up off of the couch and began to pull the door back open. While C.O. was struggling to close the door, she observed that McDonald had a gun in his left hand. As he attempted to open the door with his right hand, McDonald reached around the door with his left hand and pointed the gun at C.O. C.O. testified that McDonald was able to touch the barrel of the handgun to her forehead before she let go of the door and ran away.

{¶ 7} As C.O. ran through the parking lot of her apartment building, she lost a shoe and dropped her purse and book bag. C.O. was able to hide behind her neighbor's minivan near some bushes. From her vantage point C.O. testified that she could see McDonald walking around the parking lot, ostensibly looking for her. C.O. indicated that McDonald was still carrying the gun. While remaining hidden, C.O. called 911 and reported that McDonald had broken into her apartment and attempted to shoot her. Dayton Police Officer Christopher Page was dispatched to the scene.

{¶ 8} C.O.'s upstairs neighbor, Jason Strange, woke up upon hearing her screams

and told his wife to call 911. Strange testified that he went outside into the hallway of the apartment building and observed a man wearing a hooded sweatshirt walking up and down the hallway in front of C.O.'s apartment. Strange testified that the man then walked out into the parking lot. Strange went back into his own apartment and continued watching as the man walked around the parking lot and picked up a bag that was laying on the ground. Strange testified that he did not know whether the man had a gun. After taking the bag, the man left the parking lot on foot. Strange testified that he believed the man he observed in the hooded sweatshirt was the same man who knocked on his door earlier that day who wanted to know in which apartment unit C.O. lived.

{¶ 9} Once the man left, Strange and his wife walked outside to the parking lot to look for C.O. C.O. came out from behind the minivan to speak with them, and the police arrived shortly thereafter. Upon reentering her apartment, C.O. found that four televisions and three video game systems had been stolen. Additionally, C.O. discovered that some of her underwear had been stolen, and her nursing certificates had been ripped up. C.O. also found that McDonald had apparently eaten a pizza from her freezer and left his dirty dishes in the sink. Lastly, two zip ties were found on a table in her living room where McDonald had been sitting when she first arrived home. Although there were no signs of forced entry in the apartment, police found that the window in the master bedroom was unlocked and C.O.'s bed had been moved. The blinds attached to the window had also been torn at the bottom.

{¶ 10} An arrest warrant was issued for McDonald a few days after the offense was reported to the police. On November 12, 2015, McDonald contacted Detective Justin Hayes by telephone. Detective Hayes was the officer in charge of the

investigation of the aggravated burglary at C.O.'s residence. McDonald informed Detective Hayes that he was not going to turn himself in and had no intention of getting arrested. McDonald was eventually arrested by the U.S. Marshals on November 23, 2015. Upon being interviewed by Detective Hayes, McDonald stated that the electronics taken from C.O.'s apartment were his property, and he knew where all of the devices were located. McDonald also stated that he did not burglarize C.O.'s apartment, but he knew who did. McDonald refused to provide Detective Hayes with any further details.

{¶ 11} Detective Hayes testified that he listened to a recording of a telephone call made by McDonald from the jail on the day he was arrested. During the conversation, McDonald stated that the four televisions and the three gaming consoles had already been sold. McDonald further stated that he had hidden the "Smith" under a dresser and how he had then taken it apart, placing the spindle, pin, and spring in separate cabinets. Detective Hayes testified that "Smith" is a slang term for a Smith and Wesson handgun and that the spindle, pin, and spring are all components of a semi-automatic pistol. Detective Hayes also testified that McDonald stated during the jail call, apparently in regards to the burglary, "[a]ll that s*** was mine. I needed to get it back." We note that no handgun was ever recovered.

{¶ 12} On December 16, 2015, McDonald was indicted for one count of aggravated burglary with a one-year firearm specification, and one count of having a weapon while under disability. At his arraignment on December 22, 2015, McDonald stood mute, and the trial court entered a plea of not guilty to the indictment on his behalf.

{¶ 13} McDonald's jury trial began on August 2, 2016, and ended on August 4, 2016. McDonald was found guilty on all counts in the indictment. On August 22, 2016,

McDonald was sentenced to a mandatory ten-year prison term for aggravated burglary, ordered to be served consecutive to the mandatory one-year sentence for the firearm specification. The trial court also imposed a thirty-six month prison term for having a weapon while under disability, and ordered that term to be served concurrently to the other counts for an aggregate sentence of eleven years in prison.

{¶ 14} It is from this judgment that McDonald now appeals.

{¶ 15} Because they are interrelated, McDonald's first and second assignments of error will be discussed together as follows:

{¶ 16} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION."

{¶ 17} "APPELLANT'S CONVICTION WAS ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 18} In his first assignment, McDonald contends that the trial court erred when it overruled his Crim.R. 29 motion for acquittal with respect to the charge of aggravated burglary. Specifically, McDonald argues that the evidence adduced by the State was insufficient to establish that he possessed a handgun when he broke into C.O.'s apartment. In his second assignment of error, McDonald argues that the trial court's guilty verdict was against the manifest weight of the evidence.

{¶ 19} Crim.R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim.R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher,* 6th Dist. Lucas No. L–06–1039, 2007–Ohio–3960. "In reviewing a claim of

insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " (Citations omitted.) *State v. Crowley,* 2d Dist. Clark No. 2007 CA 99, 2008–Ohio–4636, ¶ 12.

{¶ 20} "A challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence." *State v. McKnight,* 107 Ohio St.3d 101, 2005–Ohio–6046, 837 N.E.2d 315, ¶ 69.  "A claim that a jury verdict is against the manifest weight of the evidence involves a different test.  'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " (Citations omitted.) *Id.* at ¶ 71.

{¶ 21} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).  "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility.  The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶ 22} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97–CA–03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 23} McDonald was convicted of aggravated burglary, in violation of R.C. 2911.11(A)(2), which provides as follows:

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

***

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

{¶ 24} As previously stated, McDonald argues that the State failed to adduce sufficient evidence establishing that he was carrying a handgun when he committed the instant offense. In support of his argument, McDonald asserts that C.O.'s testimony regarding her memory of the incident "was so questionable that the jury must be said to have lost its way in believing her ***." McDonald further points out that Strange testified that after being awoken by C.O.'s screams, he was unsure whether the man in the parking lot had a gun.

{¶ 25} Initially, we note that it is undisputed that McDonald did not have permission

to be in C.O.'s apartment. McDonald did not have a key, and C.O. testified that she no longer had any of his possessions. Significantly, it was only a few days before the aggravated burglary occurred that C.O. obtained a restraining order against McDonald for sending her overtly threatening texts.

{¶ 26} Additionally, C.O. unequivocally testified that when she first discovered McDonald in her apartment and the two began struggling with the front door, he had a handgun in his left hand that he pointed at her head. After C.O. was able to run away and hide in the parking lot, she testified that she observed McDonald pacing back and forth looking for her while he was holding a handgun. In her 911 call that was played at trial, C.O. told the dispatcher that McDonald had a gun and was trying to shoot her. Although not dispositive, in a phone call from the jail, McDonald admitted to taking the televisions and gaming systems from C.O.'s apartment and also mentioned disassembling and hiding his "Smith," which Detective Hayes testified is a slang term for a Smith and Wesson handgun.

{¶ 27} Construing the evidence presented in a light most favorable to the State, as we must, we conclude that a rational trier of fact could find all of the essential elements of the crimes for which McDonald was indicted and found guilty to have been proven beyond a reasonable doubt. McDonald's convictions for aggravated burglary (deadly weapon) and having a weapon while under disability were therefore supported by legally sufficient evidence.

{¶ 28} Furthermore, having reviewed the record, we find no merit in McDonald's manifest-weight challenge. It is well-settled that evaluating witness credibility is primarily for the trier of fact. *State v. Benton,* 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶

7.   Here the jury quite reasonably could have credited the extensive testimony provided by the State's witnesses, evaluated said evidence and all reasonable inferences to the elements of the offenses, and thereafter, found McDonald guilty.   Having reviewed the entire record, we cannot clearly find that the evidence weighs heavily against conviction, or that a manifest miscarriage of justice has occurred.

{¶ 29} McDonald's first and second assignments of error are overruled.

{¶ 30} McDonald's third assignment of error is as follows:

{¶ 31} "THE PROSECUTOR COMMITTED REVERSIBLE MISCONDUCT."

{¶ 32} In his third assignment of error, McDonald argues that multiple instances of prosecutorial misconduct deprived him of his right to a fair trial.   Specifically, McDonald claims that during closing arguments, the prosecutor improperly (1) provided the jury with her personal view of McDonald's character and motivations; and (2) improperly commented on the evidence adduced during trial.

{¶ 33} The sole issue before us is centered on alleged improper statements made by the State during closing arguments, and whether they constitute prosecutorial misconduct.   The test for prosecutorial misconduct was established by the Supreme Court of Ohio in *State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 61, as follows:

"The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Jones* (2000), 90 Ohio St.3d 403, 420, 739 N.E.2d 300, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883. However, the touchstone of analysis "is the fairness of the trial, not the

culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78.

**{¶ 34}** We have recognized that prosecutors are given wide latitude in their closing statements to draw inferences from the testimony heard and the evidence presented but prosecutors are not given complete and total freedom. *State v. Lillicrap,* 2d Dist. Montgomery No. 23958, 2011-Ohio-3505, ¶ 6. To determine whether the prosecutor's remarks to the jury were prejudicial, affecting substantial rights, the court must focus on the fairness of the trial, not the culpability of the prosecutor. *State v. Apanovitch,* 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). "In reviewing allegations of prosecutorial misconduct, we review the alleged wrongful conduct in the context of the entire trial," and if "it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced and his conviction will not be reversed." *State v. Underwood,* 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶ 21. *See also State v. Hall,* 2d Dist. Montgomery No. 25794, 2014-Ohio-2094, ¶ 19.

**{¶ 35}** The record establishes that there were no objections at trial to the alleged instances of prosecutorial misconduct, so we are limited to plain-error review. Plain error is not present unless, but for the error complained of, the outcome of the trial would have been different. *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. A finding of plain error should be made with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.* at paragraph three of the syllabus.

**Alleged Personal Opinions**

{¶ 36} The first occasion of alleged prosecutorial misconduct occurred during closing arguments when the prosecutor stated "[y]ou can understand what he was probably planning on doing that night ***." McDonald argues that this statement is an indication from the State to the jury that it is "supposed to give a verdict based on what McDonald was 'probably' planning, instead of what the evidence shows!" Upon review of the entire statement made by the prosecutor, however, it is clear that McDonald has taken this portion of the statement out of context. The full statement made by the prosecutor is as follows:

> *** He stayed because he was waiting for [C.O.] to get home. He was waiting for her, sitting there, with a gun. *You can understand what he was probably planning on doing that night*, based on those text messages, based upon what he did when she came home – "Don't run now." That's what he said to her – "Don't run now 'cause I've got a gun and I'm going to use it."

{¶ 37} After reading the entire passage, the prosecutor is not asking the jury to speculate about what McDonald was planning to do when he broke into C.O.'s house with a handgun. Rather, the prosecutor was simply directing the jury to consider McDonald's actions in light of the threatening text messages he sent C.O. prior to committing the instant offenses. Simply put, the prosecutor was asking the jury to make a reasonable inference based on the text message evidence presented at trial. The prosecutor's statements constitute neither misconduct nor plain error.

{¶ 38} McDonald also argues that he was prejudiced by the prosecutor's statement, "[y]ou know, it's – it's vindictive people who seek out revenge. In this case,

it's Kerry McDonald who is seeking out the revenge." Again, the prosecutor's statement is proper insofar as it relates to McDonald's motive for committing the instant offenses. In opening statements, defense counsel informed the jury that they would "hear about rejection *** hear about resentment *** and hear about revenge." In his closing argument, defense counsel argued that C.O. was wrongfully accusing McDonald of committing the instant offenses in order to get back at him because she was hurt and "had her own way of dealing with things." In response to defense counsel's assertion, the prosecutor argued the converse, namely, that it was McDonald trying to seek revenge upon C.O. for breaking up with him while he was in prison and keeping property that he believed was his. McDonald's desire for revenge may also be inferred by the fact that he ripped up C.O.'s nursing certificates while he was in her apartment waiting for her. Under the circumstances, the prosecutor's statements in this regard do not amount to misconduct.

{¶ 39} McDonald next takes exception to following statement made by the prosecutor during closing arguments:

Now, who had the motive and opportunity in this case? It was the defendant. Mad at the victim, wants his stuff back and he had the opportunity to. He doesn't have anything else going on. He's got exact information as to where she's at. He's got the time to do it. He's got the time to sit there and wait for her.

{¶ 40} McDonald argues that this statement made by the prosecutor indicated to the jury that he was a deadbeat as compared to C.O., who was employed and worked hard. Upon review, the prosecutor was not calling McDonald a deadbeat. Rather, the

prosecutor's statement was made to establish that given C.O.'s work schedule, McDonald was provided a large window of opportunity to commit the instant offenses.   Specifically, the evidence adduced at trial established that C.O. left for work at 3:00 p.m. on November 7, 2015, and did not return home until approximately 5:00 a.m. on November 8, 2015, when her nursing shift ended.   Upon review, we find that the prosecutor's statement was not an improper comment on McDonald's character, but was made to establish that he had the time and opportunity to break into C.O.'s apartment, steal her property, and then wait for her to get home from work.   We cannot find that these comments prejudiced McDonald and hence do not rise to the level of plain error.

{¶ 41} The next comment made by the prosecutor that McDonald complains of is as follows:

"You will not need a phone where you are going."   Why?   What is that implying?   He's going to kill her?   That's certainly a reasonable inference to make of that.

{¶ 42} Here, the prosecutor was merely drawing a reasonable inference from an overtly threatening text message sent by McDonald to C.O.   During a criminal trial, both the state and the defense present their theories of the case based on the evidence adduced.   In this instance, the prosecutor exercised her right to interpret the evidence in a manner favorable to her position. *State v. Black*, 181 Ohio App.3d 821, 2009-Ohio-1629, 911 N.E.2d 309, ¶ 35 (2d Dist.). Moreover, the above text was preceded by another text from McDonald which stated, "When I catch u I wonder is you gone beg for yo life like you begged me to be with you.   COWARDSDIEATHOUSANDDEATHS." Clearly, the prosecutor was free to comment on the reasonable inference to be drawn

from these texts sent by McDonald, specifically, that he wanted C.O. to be in fear for her life, even suggesting death.

{¶ 43} McDonald also challenges the following remarks of the prosecutor as being denigrating to the jury, to wit: "[I]s the same time when she comes home, somebody's waiting there to shoot her? A coincidence? No. Use your common sense. What's reasonable?" Here, McDonald has taken the comment of the prosecutor completely out of context. The entire statement made by the prosecutor is as follows:

> Now, you know, Defense Counsel keeps going back to, well, the victim was lying. She's making this up. She's getting back at him. The evidence in this case does not corroborate that at all. Does it just so happen to be a coincidence that, on the same day that he finds out where she lives is the same day that her place gets broken into and is the same time when she comes home, somebody's waiting there to shoot her? A coincidence? No.
>
> Use your common sense. What's reasonable? That same day that the defendant goes there, all this stuff happens. It's not a coincidence.

{¶ 44} McDonald's defense at trial was that he did not commit any of the crimes he was accused of, and C.O. was simply trying to get back at him. The prosecutor's characterization of this evidence was a reasonable comment given C.O.'s testimony that McDonald pointed the gun at her forehead and was clearly not designed to insult the jury.

### Alleged Improper Comments on the Evidence

{¶ 45} Here, McDonald argues that it was improper for the prosecutor to state that "the simple fact that [Strange] couldn't see [the gun] was because of where he was

[standing]. That doesn't mean that the defendant didn't have a gun on him and use it against [C.O.]." In closing, defense counsel stated, "Strange didn't see [the gun], minutes after this scream – minutes after this struggle at the door." At trial, Strange testified that he *did not know* if the perpetrator had a gun in his possession when he observed the man in the apartment parking lot. The prosecutor's statement regarding Strange's inability to see the gun and McDonald's possession of the gun was not an improper comment on the evidence.

{¶ 46} McDonald next argues that the prosecutor improperly commented on the evidence by speculating regarding why a gun was never found. The prosecutor's statement is as follows:

And why is the gun not found usually? Because they're hiding it. Because they took it with them from the scene and hide it, which is exactly what the defendant was talking about in his jail calls, hiding that gun.

{¶ 47} McDonald argues that this statement establishes that the prosecutor went beyond the scope of the evidence. In support of his argument, McDonald cites *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860. In *Rucker*, the defendant argued that the prosecutor's statement, "We do not reward defendants for getting rid of the gun. We don't do it," was an improper statement of the prosecutor's personal belief or opinion. Although we found the statement to be objectionable, we ultimately held that the prosecutor's statement was harmless beyond a reasonable doubt. *Id.* at ¶ 32. Before making the objectionable statement, the prosecutor detailed the testimony of three witnesses who saw the defendant with a handgun.

{¶ 48} In the instant case, although the prosecutor did comment on the absence

of the gun, she went on to discuss McDonald's recorded jail conversation in which he described disassembling and hiding a handgun. Additionally, in her closing argument, the prosecutor had already discussed C.O.'s testimony regarding McDonald's possession and use of the gun against her. In our view, the prosecutor's statement did not exceed the scope of the evidence presented at trial. The prosecutor was only relying on evidence adduced in order to establish why no gun was recovered. The prosecutor's statements do not amount to misconduct nor plain error.

{¶ 49} McDonald next challenges the following statements by the prosecutor as being outside the scope of the evidence established at trial:

> You heard [C.O] thought she was going to die when the defendant approached her with a gun, when he put that gun against her, when she found there were zip ties waiting for her.

{¶ 50} When she was asked how she felt when she was struggling with McDonald and he put the gun up to her head, C.O. testified, "I was scared" and "I didn't think I was going to make it." Moreover, in the 911 call that C.O. made while hiding from McDonald in the parking lot of her apartment, she told the dispatcher that he "was trying to kill me." Therefore, the evidence adduced at trial supported the prosecutor's statements during closing regarding C.O.'s belief that she was "going to die."

{¶ 51} Lastly, McDonald claims the following statements by the prosecutor constituted misconduct:

> [McDonald's] talking about it. On his own jail calls, about the gun he'd had – the gun that C.O. had seen him with that day. He's not allowed to have a gun but he's talking about it because he's used it. And now he wants to

hide it.

{¶ 52} As previously discussed, the State adduced evidence that, if believed, established that McDonald had a handgun and used it to commit the instant offenses. The eyewitness testimony of C.O. and Detective Hayes' testimony regarding McDonald's recorded jail conversations in which he speaks of disassembling and hiding a handgun provided a clear basis for the statements made by the prosecutor in her closing arguments.

{¶ 53} McDonald's defense centered on his claim he did not commit any of the crimes he was accused of, and C.O. was simply trying to get back at him. The State, however, presented ample evidence that McDonald committed the instant offenses and that he did so with a handgun. Based on the record before us, we find that none of the remarks made by the prosecutor constitute plain error.

{¶ 54} McDonald's third assignment of error is overruled.

{¶ 55} McDonald's fourth and final assignment of error is as follows:

{¶ 56} "APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 57} In his final assignment, McDonald argues that he received ineffective assistance of counsel for the following reasons, to wit: 1) defense counsel failed to request jury instructions on the lesser included offense of burglary; and 2) failing to object to the prosecutor's allegedly improper statements made during closing arguments. Lastly, McDonald contends that he did not receive a fair trial as a result of the effect of cumulative errors which occurred during trial.

{¶ 58} "We review the alleged instances of ineffective assistance of trial counsel

under the two prong analysis set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley* (1989), 42 Ohio St.3d 136, * * *. Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland,* 466 U.S. at 688 [104 S.Ct. 2052]. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.* Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Internal citation omitted). *State v. Mitchell,* 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31.

{¶ 59} An appellant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown,* 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). The test for a claim of ineffective assistance of counsel is not whether counsel pursued every possible defense; the test is whether the defense chosen was objectively reasonable. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy. *State v. Smith,* 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel, even if, in hindsight, it looks as if a better strategy had been available. *State v. Cook,* 65 Ohio

St.3d 516, 524, 605 N.E.2d 70 (1992).

## Burglary Instruction

**{¶ 60}** As previously stated, McDonald's defense at trial was that he did not commit any of the crimes he was accused of, and C.O. was simply trying to get back at him. Prior to closing arguments, the trial court engaged in the following conversation with the parties:

The Court: That said, in this case, neither the Defense nor the State have asked for an instruction on a lesser-included offense relative to the charge of aggravated burglary, and the Court appreciates that I'm dealing with experienced trial counsel who I know have looked at this closely. And I know that the fact I've not received a requested instruction from either side is the product of tactical consideration on each side. And it's not my role, and I don't want to presume to intrude on the trial strategies of experienced lawyers. So let me say that by way of kind of an editorial comment.

Having said that, [defense counsel], first turning to you, you have not asked me to instruct the jury on the lesser-included offense of burglary vis-à-vis the current instruction on aggravated burglary, which, as you know, involves, as a required predicate, a finding by the jury that the defendant had on his person a deadly weapon, namely a firearm.

Can you simply, in a thumbnail articulation, give me a reason that you've made the decision not to request the instruction?

Defense Counsel: Yes. Judge, alternative pleadings, it's been my experience, are not allowed in criminal cases. *I believe to request a lesser-*

*included offense would be inconsistent with the Defense in this case, which*

*is Mr. McDonald wasn't there. Mr. McDonald didn't have a gun. Mr.*

*McDonald didn't do it.*

The Court: And, [defense counsel], this is something that you've

discussed with Mr. McDonald and it's something that he has given you the

authority to say to me, as you did just now, and to also not seek that lesser-

included instruction?

Defense Counsel: *Yes.*

The Court: Is that correct, Mr. McDonald?

McDonald: *That's correct.*

**{¶ 61}** Whether to request a lesser-included offense instruction, or to seek an

acquittal based on an "all or nothing" approach has been considered a matter of trial

strategy. "Failure to request instructions on lesser-included offenses is a matter of trial

strategy and does not establish ineffective assistance of counsel." *State v. Lyle,* 3d Dist.

Allen No. 1–14–41, 2015–Ohio–1181, ¶ 37, quoting *State v. Griffie,* 74 Ohio St.3d 332,

333, 658 N.E.2d 764 (1996), citing *State v. Clayton,* 62 Ohio St.2d 45, 402 N.E.2d 1189

(1980). To find reversible error, we must conclude that the trial strategy was so deficient

that manifest injustice occurred. "Deficient performance means that claimed errors were

so serious that the defense attorney was not functioning as the 'counsel' that the Sixth

Amendment guarantees." *State v. Ulery,* 2d Dist. Clark No. 2009–CA–5, 2010–Ohio–376,

¶ 10, citing *State v. Cook,* 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992). The "all or

nothing" trial strategy has been reviewed and considered competent and effective when

the evidence presented to a jury has a reasonable chance of being viewed as insufficient

to meet the State's burden of proof. *See State v. Taylor,* 10th Dist. Franklin No. 12AP–870, 2013–Ohio–3699, ¶ 41; *State v. Marsh,* 7th Dist. Mahoning No. 12 MA 40, 2013–Ohio–2949, ¶ 19; *State v. Bell,* 2d Dist. Montgomery No. 22448, 2009–Ohio–4783, ¶ 52.

**{¶ 62}** Nonetheless, counsel's ineffectiveness in this regard is not reversible error unless there exists a substantial likelihood that correction of the error would result in a different outcome. *State v. Dover*, 2d Dist. Clark No. 2013–CA–58, 2015-Ohio-4785, ¶ 15. In the case before us, we are not persuaded that the evidence was overwhelmingly in favor of an acquittal on the charge of aggravated burglary. We cannot say the jury lost its way when weighing the credibility of the victim's testimony so as to accept her testimony that McDonald held a gun to her head after breaking into her apartment. Thus, we conclude that counsel's decision to not request the lesser-included offense of burglary did not result in manifest injustice and did not constitute ineffective assistance.

### Failure to Object to Prosecutor's Closing Comments

**{¶ 63}** In our analysis of McDonald's third assignment, we found that none of the statements made by the prosecutor during her closing argument rose to the level of prosecutorial misconduct because they "consisted of factual statements that were supported by the evidence." *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 119. As there was "no meritorious basis for any objections to these comments," defense counsel was not ineffective for failing to object. *Id.*, citing *State v. Tibbetts*, 92 Ohio St.3d 146, 169, 749 N.E.2d 226 (2001).

**{¶ 64}** Regarding McDonald's cumulative error argument, we recently stated as follows:

"[S]eparately harmless errors may violate a defendant's right to a fair trial

when the errors are considered together. *State v. Madrigal,* 87 Ohio St.3d 378, 2000–Ohio–448, 721 N.E.2d 52. In order to find 'cumulative error' present, we must first find that multiple errors were committed at trial. *Id.* at 398, 721 N.E.2d 52. We must then find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Thomas,* Clark App. No. 2000–CA–43, 2001–Ohio–1353." *State v. Kelly,* 2d Dist. Greene No. 2004–CA–20, 2005–Ohio–305, ¶ 33. "Where no individual, prejudicial error has been shown, there can be no cumulative error. *State v. Blankenship* (1995), 102 Ohio App.3d 534, 557, 657 N.E.2d 559." *State v. Jones,* 2d Dist. Montgomery No. 20349, 2005–Ohio–1208, ¶ 66.

*State v. Cox*, 2d Dist. Montgomery No. 25477, 2013-Ohio-4941, ¶ 91.

**{¶ 65}** In light of our foregoing analysis, we find that McDonald has failed to establish that any errors occurred in the instant case. *Cox* at ¶ 91. Thus, we fail to see how the absence of error can constitute cumulative error. *Id.*

**{¶ 66}** McDonald's fourth and final assignment of error is overruled.

**{¶ 67}** All of McDonald's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Andrew T. French
Candi S. Rambo
Hon. Michael W. Krumholtz